No. 2888.

JOHN WILLIAMS v. THE STATE.

1. THEFT.—INDICTMENT alleged the possession and ownership of the stolen animal to be in S. The proof established the ownership as alleged, but showed that the animal was taken from the possession of B. *Held*, that the proof confutes the allegation of possession.

2. SAME—PLEADING.—Under the circumstances of this case, the indictment should either have alleged both the possession and ownership in B., or that S. was the owner of the animal and that it was taken from the possession of B., who was holding it for S.

APPEAL from the District Court of Liberty. Tried below before the Hon. L. B. Hightower.

The conviction in this case was for the theft of a cow, the indictment alleging both the possession and ownership to be in J. F. Skinner. The penalty assessed was a term of two years in the penitentiary.

J. F. Skinner was the first witness for the State. He testified that for four or five years preceding this trial he had lived in Lampasas county. He never at any time gave defendant his consent to take any of his cattle.

On cross examination, the witness stated that Tom Brewer, at the time of this offense, and for four years before, had charge of a small stock of gentle cattle which belonged to witness, and which ranged near said Brewer's place in Liberty county. Brewer's authority extended only to milking the cows, marking and branding the calves, and to generally looking after the

cattle. He had no authority to sell or dispose of any of them. After the arrest of defendant, witness went to Liberty county to see about his cattle. He missed an animal which corresponded with the animal hereinafter described by the witness Jake Williams. That animal was a heifer when witness last saw her.

Jake Williams testified, for the State, that he went into the woods, near his house, in Liberty county, about an hour and a half before sun down on the evening of December 27, 1887, and surprised the defendant in the act of skinning and cutting up a cow which had been recently killed, and which, by the flesh marks and marks and brand, witness knew to belong to J. F. Skinner. When he first discovered the witness, the defendant covered him with a shotgun. Witness said to him: "Hold up! Don't point that gun at me." Defendant replied: "You won't give me away, will you?" Witness replied that he had nothing to do with it. He then went to Tom Brewer, who had charge of Skinner's cattle, and reported the matter to him. About dark on that night witness piloted Sheriff Morris and others to the place where the cow had been killed. They found the carcass, a part of one quarter having been removed. The brand was cut from the hide, and the ears had been cut off and taken away. The animal described was about five years old. She had brown sides and a striped back, and was an animal that Brewer had milked until a short time before she was killed.

Sheriff Morris, for the State, testified to finding the carcass of the cow at the place and in the condition described by Jake Williams. He then went to defendant's house and searched it for fresh meat, but failed to find any on the premises. Some of the posse, however, found some in a thicket near the house. Witness then went to the place where the Farmers Alliance was in session, and arrested defendant. This occurred on the night of the day on which Jake Williams claimed to have seen defendant skinning the cow. The State closed.

Nancy Jones testified, for the defense, that she visited the house of the State's witness Jake Williams in May, 1887, and that in the course of a conversation about a corn transaction, between himself and defendant, the said Jake Williams said, in her presence and hearing, that he would get his revenge on the defendant.

Aaron Bullock testified, for the defense, that, while squirrel hunting on the evening of the alleged detection by Jake Williams of defendant in the act of skinning the cow, he came upon the defendant cutting poles near his house. He hunted the woods within the hearing of defendant's axe until about an hour before sun down, during which time he heard no other gun shots than his own. From the woods, at the hour mentioned—an hour before sun down—he went to defendant's house. Defendant soon arrived but brought no fresh beef. He, defendant, had no gun with him in the woods when witness saw him. Witness and defendant remained at defendant's house until after supper, when defendant left to attend a meeting of the Farmers Alliance.

Tom Brewer, testifying for the defense, corroborated the witness, Skinner, as to the extent of his authority over Skinner's cattle. Jake Williams, as stated by him, pointed out to witness the carcass of the cow he claimed to have seen the defendant skinning. Judging from the color of the hide, the animal was one of Skinner's cows which witness had milked until a short time previous, when he branded her calf and turned them on the range. But the ears having been removed from the head, and the brand having been destroyed, witness could not positively identify the animal. He had never seen the Skinner cow on the range since the alleged killing, but had never looked for her.

*Douglass & Lanier*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. In the indictment the ownership and possession of the alleged stolen animal are averred to be in J. F. Skinner. It is shown by the evidence, conceding the animal to have been the property of said Skinner, that it, together with other cattle belonging to said Skinner, had been placed in the care, management and under the control of one Tom Brewer, who had authority to, and who did, look after them, milk the cows and mark and brand the calves, the said Skinner being a resident of Lampasas county, while said cattle ranged in Liberty county at and near the residence of said Brewer. Said Brewer had exercised such care, management and control of said cattle for about four years prior to the time of the alleged theft.

Such being the proof, the allegation as to the *possession* of the animal was not sustained, for the possession was in Brewer and not in Skinner. The indictment should have alleged the ownership in Skinner and the possession in Brewer, or, it would have been sustained by the proof, had it alleged the ownership and possession both in Brewer. (Willson's Cr. Stat., sec. 1258; Tinney v. The State, 24 Texas Ct. App., 112; Alexander v. The State, 24 Texas Ct. App., 126.)

The court instructed the jury erroneously upon the question of possession, and refused instructions requested by the defendant which should have been given; and because of such errors, and because of the variance between the allegation and the proof as to possession, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*